# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

TAYLOR WHITE, on behalf of himself   §
and on behalf of others similarly situated   §
  §
    **Plaintiffs,**   §
  §
VS.   §     **Case No. 4:13cv13**
  §
DENTON COUNTY   §
  §
    **Defendant.**   §

## REPORT AND RECOMMENDATION OF UNITED STATES
## <u>MAGISTRATE JUDGE</u>

Now before the Court is Defendant's Motion for Summary Judgment (Dkt. 57). As set forth below, the Court recommends that the motion be GRANTED and that Plaintiff take nothing by his claims.

### BACKGROUND

The facts giving rise to this suit are fairly straightforward. Plaintiff Taylor White was hired as a detention officer for the Denton County Sheriff's Office in December 2006. In January 2013, while still employed by the Denton County Sheriff's Office, Plaintiff filed this suit against his employer alleging violations of the overtime pay provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.* Plaintiff alleged that the County failed to pay him monetary overtime pay, and instead compensated him with the granting of compensatory time, in violation of the FLSA.

After he filed this suit, Plaintiff was terminated from employment. Defendant alleges that Plaintiff was terminated for his use of excessive force against an inmate. Plaintiff is alleged to have

1

kicked milk crates out from underneath an inmate he was supervising, causing the inmate to fall to the ground and complain of pain. Plaintiff, on the other hand, argues that his termination was retaliation for his filing of his FLSA suit and that the reasons given for his termination were purely pretextual. Plaintiff subsequently amended his complaint in this action to add claims of retaliation under the FLSA.

In his Second Amended Complaint, Plaintiff alleged three violations of the FLSA's pay provisions: (1) forced compensatory time in lieu of straight time; (2) forced compensatory time in lieu of overtime pay; and (3) failure to timely pay both straight time and overtime pay. Dkt. 29. Plaintiff also asserted a claim for retaliation under the FLSA, sought declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §2201, and requested class certification of similarly situated employees.

On March 28, 2014, the Court dismissed Plaintiff's claims of forced compensatory time in lieu of straight time, Plaintiff's failure to pay straight time claim, and Plaintiff's claim for declaratory judgment as to the hours worked between 81 and 86 hours. *See* Dkt. 53 (adopting Dkt. 45). Not satisfied that there were individuals similarly situated to Plaintiff, the Court also denied conditional certification of Plaintiff's proposed class. *Id.*

The Court found, however, that Plaintiff had sufficiently stated his FLSA retaliation claim as well as his claims of forced compensatory time in lieu of overtime pay, his failure to pay overtime pay claim, and his claim for declaratory judgment regarding payment for hours worked in excess of 86 hours. *Id.* The Court thus permitted those claims to proceed. *Id.*

Defendant has filed a motion for summary judgment regarding Plaintiff's remaining claims. In its motion, Defendant argues that Plaintiff's remaining FLSA overtime pay claims, as well as his corresponding claim for declaratory relief, fail as a matter of law because the competent summary judgment evidence makes it clear that Plaintiff agreed to be compensated with compensatory time for overtime worked. Defendant also argues that Plaintiff's FLSA retaliation claim fails because Plaintiff cannot establish a *prima facie* case of retaliation and that, even if he could establish a *prima facie* case of retaliation, the County has offered a legitimate nonretaliatory reason for terminating him and Plaintiff cannot show that this reason is pretextual. Plaintiff has filed a response in opposition, arguing there is a fact issue as to his remaining claims. *See* Dkts. 71 & 73. The Court addresses the parties' arguments below.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Hunt v. Cromartie*, 526 U.S. 541, 549, 119 S. Ct. 1545, 143 L. Ed.2d 731 (1999). The appropriate inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986).

The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel,* 274 F.3d 984, 991 (5th Cir. 2001). In sustaining this burden, the movant must identify those portions of pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2553, 91 L. Ed.2d 265 (1986). The moving party, however, "need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant's burden is only to point out the absence of evidence supporting the nonmoving party's case. *Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996).

In response, the nonmovant "may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Anderson*, 477 U.S. at 255-57, 106 S. Ct. at 2513-14). Once the moving party makes a properly supported motion for summary judgment, the nonmoving party must look beyond the pleadings and designate specific facts in the record to show that there is a genuine issue for trial. *Stults*, 76 F.3d at 655. The citations to evidence must be specific, as the district court is not required to "scour the record" to determine whether the evidence raises a genuine issue of material fact. E.D. TEX. LOCAL R. CV-56(d). Neither "conclusory allegations" nor "unsubstantiated assertions" will satisfy the nonmovant's burden. *Stults*, 76 F.3d at 655.

## EVIDENCE PRESENTED

Defendant offers the following evidence in support of its Motion for Summary Judgment: (1) Exhibit 1: the Affidavit of Sheriff William Travis with exhibits; (2) Exhibit 2: the Affidavit of Chief Deputy Rex George with exhibit; (3) Exhibit 3: the Affidavit of Lieutenant Joseph Connolly

with exhibits; (4) Exhibit 4: the Affidavit of Mandy Smithers with exhibits; (5) Exhibit 5: the Affidavit of Amy Phillips with exhibits; (6) Exhibit 6: excerpts from the deposition of Taylor White; (7) Exhibit 7: excerpts from the deposition of William Travis; (8) Exhibit 8: excerpts from the deposition of Ray Davenport; (9) Exhibit 9: the Affidavit of Lisa Uhlich with exhibits; and (10) Exhibit 10: Plaintiff's Objections and Responses to Defendant's First Set of Interrogatories. Dkt. 57-1–57-11.

In response, Plaintiff offers: (1) Exhibit 1: an email from Sheriff Travis; (2) Exhibit 2: Notice of Disciplinary Action to Taylor White; (3) Exhibit 3: Denton County Internal Affairs Statement; (4) Exhibit 4: documents from the investigation file of Officer EW; (5) Exhibit 5: documents from the investigation file of Officer MM; (6) Exhibit 6: documents from the investigation file of Officer JG; (7) Exhibit 7: documents from the investigation file of Officer NH; (8) Exhibit 8: documents from the investigation file of Officer RG; (9) Exhibit 9: documents from the investigation file of Officer WB; (10) Exhibit 10: documents from the investigation file of Officer TS; (11) Exhibit11: documents from the investigation file of Officer CM; (12) Exhibit 12: documents from the investigation file of Officer AT; (13) Exhibit13: documents from the second investigation file of Officer AT; (14) Exhibit 14: documents from the investigation file of Officer RB; (15) Exhibit15: documents from the investigation file of Officer BW; (16) Exhibit16: excerpts from the deposition of Roy Davenport; (17) Exhibit 17: excerpts from the deposition of William Travis; (18) Exhibit 18: Denton County Sheriffs Office Internal Affairs and Investigation Manual; (19) Exhibit 19: affidavit of Plaintiff; and (20) Exhibit 20: videotape of EW incident. *See* Dkt. 71-1-6; Dkt. 73 (sealed exhibits).

The Court now addresses whether the summary judgment evidence creates a fact issue as to Plaintiff's remaining claims.

**ANALYSIS**

**Forced Compensatory Time in Lieu of Overtime Pay (for hours in excess of 86)**

In his remaining FLSA overtime pay claims (under counts 2, 3, and 4), Plaintiff claims that he was not properly or timely paid cash at time-and-a-half his regular rate of pay for hours worked in excess of 86 hours. Plaintiff further seeks declaratory relief that, for any 14-day work period in which he worked in excess of 86 hours, he was not timely and properly paid cash for overtime hours worked in excess of 86 hours. The County responds that any overtime was properly paid in compensatory time under the County's Policy.

Denton County's policy for "Compensation of Overtime Worked: Non-Exempt Law Enforcement" ("the Policy") provides that "[o]vertime will be paid in either compensatory time or pay when required" and "[h]ours worked in excess of eighty-six (86) hours shall be compensated on a time and a half basis." Dkt. 28-1 at 2. Under 29 U.S.C. §207(o):

> (o) Compensatory time (1) Employees of a public agency which is a State, a political subdivision of a State, or an interstate governmental agency may receive, in accordance with this subsection and in lieu of overtime compensation, compensatory time off at a rate not less than one and one-half hours for each hour of employment for which overtime compensation is required by this section.

29 U.S.C. §207(o)(1).

Plaintiff acknowledges the exception set forth in Section 207(o) but claims that there is no record of an agreement between him and the County as required by Section 207(o)(2) which provides:

(2) A public agency may provide compensatory time under paragraph (1) only (A) pursuant to – (I) applicable provisions of a collective bargaining agreement, memorandum of understanding, or any other agreement between the public agency and representatives of such employees; or (ii) in the case of employees not covered by subclause (ii), ***an agreement or understanding arrived at between the employer and employee before the performance of the work****....*

29 U.S.C. § 207(o)(2)(A) (emphasis added).

In order for the exception to apply, "[t]he employer must arrive at an agreement or understanding with employees that compensatory time will be granted instead of cash compensation." *Christensen v. Harris County*, 529 U.S. 576, 579, 120 S. Ct. 1655, 1658 - 59 (2000) (citing 29 U.S.C. § 207(o)(2); 29 C.F.R. § 553.23 (1999)). The Supreme Court has noted that "[s]uch an agreement or understanding need not be formally reached and memorialized in writing, but instead can be arrived at informally, such as when an employee works overtime knowing that the employer rewards overtime with compensatory time." *Id.* at 579, n.1. As further explained by the Federal Regulations:

An agreement or understanding may be evidenced by a notice to the employee that compensatory time off will be given in lieu of overtime pay. In such a case, an agreement or understanding would be presumed to exist for purposes of section 7(o) with respect to any employee who fails to express to the employer an unwillingness to accept compensatory time off in lieu of overtime pay. However, the employee's decision to accept compensatory time off in lieu of cash overtime payments must be made freely and without coercion or pressure.

29 C.F.R. § 553.23(a)(1).

Plaintiff's complaint alleges that "no such agreement for the granting of compensatory time in lieu of cash has been reached between Defendant and Plaintiffs before the performance of work. Nor is there any record of the existence of any such agreement." Dkt. 29 at ¶29. The summary

judgment record indicates otherwise.

In its motion, Defendant submits the Affidavit of Amy Phillips, Director of Human Resources for Denton County, stating that when a new employee is hired, he or she receives and acknowledges receipt of the County's Employee Handbook. Dkt. 57-6 at 2-3. Attached to the affidavit are a January 10, 2007 Employee Acknowledgment form signed by Plaintiff stating that he had received and agreed to read and follow the Denton County Handbook, a copy of Denton County Personnel Policy 3.3 for non-exempt employees, and a copy of the Denton County Handbook in effect at the time of Plaintiff's employment. Dkt. 57-6. The Handbook contains the following provision:

### OVERTIME PAY/COMPENSATORY TIME

*Exempt Employees*
Although the Fair Labor Standards Act does not require overtime payment to exempt employees, Denton County grants compensatory time to exempt employees on a straight time basis for each hour worked in excess of forty (40) hours per week. Exempt employees will not be paid for compensatory time upon termination.

*Non-Exempt Employees*
Non-exempt employees shall be compensated on a time and a half basis, for all overtime worked. Overtime compensation may be in the form of monetary payment or compensatory time.

Please refer to Personnel Policies #3.3 & #3.4 for details on overtime pay or compensatory time.

Dkt. 57-6 at 46. As noted above, Plaintiff signed an acknowledgment form stating that he "agree[d] to read and follow" the Handbook during his employment. Dkt. 57-6 at 5. Plaintiff also signed a "Denton County Sheriff's Officer Personnel Manual Notification Form" noting where he could locate electronic and hard copies to the manual and acknowledging that it was his responsibility to

read and be familiar with the policies, procedures, and rules in it. Dkt. 57-4. Defendant further cites to deposition testimony by Plaintiff agreeing that, assuming he received a copy of the Handbook, he would have been informed by the language in it that "overtime compensation could be in the form of monetary payment or compensatory time." Dkt. 57-7 at 10-11. Plaintiff also conceded that the County's personnel policy contained details on overtime pay and compensatory pay. *Id.*

As part of its summary judgment evidence, the County also cites to a May 27, 2009 email to County employees, including Plaintiff, setting forth information about the County's modification to the manner in which it calculated accrued compensatory time. Dkt. 57-5 at 79. Plaintiff agrees that this email informed employees of changes to how compensatory overtime was going to be calculated and that the email would have made him aware of this as of May 27, 2009. Dkt. 57-7 at 14.

In his summary judgment response, Plaintiff cites generally to his affidavit for the proposition that "there is a fact issue over whether or not Plaintiff agreed to accept compensatory time in lieu of overtime pay." Dkt. 71 at 13. Plaintiff's affidavit states that he never agreed to accept compensatory time "in lie [sic] of overtime pay." Dkt. 73-14 at 1. Plaintiff further states that, in August 2012, he sent emails to the Denton County Treasurer regarding the manner in which he was being paid. *Id.*[1] In his deposition, Plaintiff conceded that this correspondence was the first time he complained about how overtime compensation time was being calculated. Dkt. 57-7 at 16-17. In turn, Plaintiff argues that, at a minimum, there is a fact issue with respect to compensatory time after August 2012.

---

[1]Neither Plaintiff's response nor his affidavit cite to the portion of the record containing such correspondence with the County Treasurer. *See generally* Dkt. 71 at 14; 73-14.

Having reviewed Defendant's voluminous summary judgment evidence and Plaintiff's summary judgment response, the Court finds that Plaintiff has failed to demonstrate a fact issue as to his alleged lack of agreement to be paid in compensatory overtime time from the time he was hired until August 2012. Primarily, the Court notes that Plaintiff's citations to the summary judgment record in regard to his overtime pay claim lack the consistency and specificity contemplated of the non-movant in summary judgment proceedings. The Court is not required to "scour the record" to determine whether the evidence in the record raises a genuine issue of material fact. E.D. TEX. LOCAL R. CV-56(d). Moreover, the evidence specifically cited by Defendant shows repeated notice to Plaintiff – and acknowledgment thereof by Plaintiff – that he could be paid with either compensatory time *or* monetary pay.

The only evidence in the record evidencing any complaint by Plaintiff regarding the manner in which overtime pay was compensated or paid is his affidavit and deposition testimony regarding the August 2012 email to the County Treasurer, Cindy Brown. *See* Dkt. 73-14; Dkt. 57-7 at 19. And Plaintiff has not even cited to the email in the summary judgment record.

Indeed, there is no evidence in the record to demonstrate that he expressed any unwillingness to accept the compensatory time in lieu of pay until August 2012 at the earliest. Thus, the agreement or understanding is presumed to exist under Section 7(o), *see* 29 C.F.R. § 553.23(a)(1). Plaintiff has offered no summary judgment evidence to rebut that. Nor has Plaintiff offered any evidence that any acceptance by him of any compensatory time off in lieu of cash overtime payments prior to August 2012 was not made freely and without coercion or pressure. *Id.* There is no fact issue before the Court, and summary judgment should be granted as to any overtime compensation Plaintiff seeks

for time prior to August 2012.

This leaves for resolution Plaintiff's claims regarding any overtime worked after August 2012, when Plaintiff claims that he first complained to the City Treasurer and arguably no longer agreed to be compensated in compensatory overtime pay. Defendant has argued that Plaintiff's allegation that the Policy was more than three years old, coupled with Plaintiff's concession that he received compensatory time under the Policy should determine all overtime claims. The Court agrees that Plaintiff may have waived his claim to any overtime pay – including any overtime accrued after his first complaint in 2012 – by virtue of his own conduct. However, without any authority directly on point and out of an abundance of caution, the Court reviews the record to determine whether Plaintiff has created a fact issue as to any overtime pay accrued after August 2012.

An employee bringing an action for unpaid overtime compensation must first demonstrate by a preponderance of the evidence: (1) that there existed an employer-employee relationship during the unpaid overtime periods claimed; (2) that the employee engaged in activities within the coverage of the FLSA; (3) that the employer violated the FLSA's overtime wage requirements; and (4) the amount of overtime compensation due. *Johnson v. Heckmann Water Res. (CVR)*, Inc., 758 F.3d 627, 630 (5th Cir. 2014). "An employee bringing an action pursuant to the FLSA, based on unpaid overtime compensation, must first demonstrate that she has performed work for which she alleges she was not compensated." *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 441-42 (5th Cir. 2005) (*citing Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 687-88, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946)).

Even assuming the County could be found to have violated the overtime wage requirements by virtue of Plaintiff's purported revocation of his consent to be paid in time rather than money in accordance with 29 U.S.C. §207(o), Plaintiff has failed to make any specific allegations or present any summary judgment evidence to show the amount of overtime compensation he contends is due.

Notably, Plaintiff's summary judgment affidavit is silent as to any overtime pay he claims he is owed after sending the August 2012 email. Indeed, Plaintiff cites to no summary judgment evidence to demonstrate that he, in fact, performed overtime work for which he was improperly compensated from August 2012 until his termination in April 2013. *Harvill*, 433 F.3d at 441-42 (affirming grant of summary judgment for employer defendant where the plaintiff offered no factual allegations at all to substantiate her claim, presented no evidence of the amount or the extent of hours she worked without compensation, and presented no evidence that her employer was aware that she worked overtime hours without compensation). "[A]n unsubstantiated and speculative estimate of uncompensated overtime does not constitute evidence sufficient to show the amount and extent of that work as a matter of just and reasonable inference." *Ihegword v. Harris Cnty. Hosp. Dist.*, 555 F. App'x 372, 375 (5th Cir. 2014) (affirming grant of summary judgment in favor of employer on a plaintiff's FLSA claim) (internal citations omitted).

Here, Plaintiff does not even offer summary judgment evidence to show an unsubstantiated estimate of any overtime worked. Plaintiff has failed to raise a genuine issue of material fact

regarding the amount of uncompensated overtime pay he seeks,[2] and summary judgment is proper for Defendant as to Plaintiff's claims of forced compensatory time in lieu of overtime pay and failure to pay overtime pay.

Because those claims fail and because, as noted in Defendant's reply, Plaintiff makes no mention of – and cites to no summary judgment evidence in support of – his claim for declaratory relief, Plaintiff has failed to sustain his burden as to his claim for declaratory judgment regarding payment for hours worked in excess of 86 hours. There is no fact issue as to that claim either.

Summary judgment should be granted for Defendant as to Plaintiff's remaining FLSA overtime pay claims under counts 2, 3 and 4 regarding forced compensatory time in lieu of overtime pay for hours exceeding 86. Plaintiff should take nothing by those claims.

**Retaliation**

This leaves Plaintiff's claim of retaliation under Count 5 of his Second Amendment Complaint. In his retaliation claim under 29 U.S.C. § 215(a), Plaintiff alleges that he was terminated from employment on or about April 23, 2013 in retaliation for the filing of this lawsuit and otherwise inquiring into Defendant's alleged overtime and wage violations.

Retaliation claims under the FLSA are subject to the *McDonnell Douglas* analytical framework. To make a *prima facie* showing of FLSA retaliation, Plaintiff must show: (1) his

---

[2]The Court notes that this is equally the case for the time worked before August 2012. There is simply nothing in the record to show the overtime pay for which Plaintiff seeks compensation.

participation in protected activity under the FLSA; (2) an adverse employment action; and (3) a causal link between the activity and the adverse action. *Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 624 (5th Cir. 2008). If Plaintiff meets this burden, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for its decision, and the burden then shifts back to Plaintiff to demonstrate that the proffered reason is a pretext for discrimination. *Id.* "The FLSA does not require that a plaintiff successfully prove a claim for overtime under the FLSA, but merely that the plaintiff prove he was engaged in a protected activity." *Little v. Technical Specialty Prods., LLC*, 940 F. Supp.2d 460, 478 (E.D. Tex. 2013). Thus, the Court proceeds with the retaliation analysis despite finding that Plaintiff should take nothing by his FLSA overtime claims.

*Prima Facie Case*

In its motion for summary judgment, Defendant argues that Plaintiff cannot establish a *prima facie* case of retaliation. Defendant does not dispute that Plaintiff engaged in a statutorily protected activity or that suffered an adverse employment action. However, Defendant argues that Plaintiff simply cannot demonstrate any causal connection between his termination and his complaints in this lawsuit. Under current Fifth Circuit precedent, "in retaliation cases the employee must prove that the adverse employment action would not have occurred 'but for' plaintiff's protected activity." *Kanida v. Gulf Coast Med. Personnel LP*, 363 F.3d 568, 580 (5th Cir. 2004).

"To satisfy the causation prong, a plaintiff must show that the decisionmaker who committed the adverse employment action was aware of the plaintiff's protected activity." *Cole v. City of Port*

*Arthur, Texas*, 2014 WL 3513366, at *14 (E.D. Tex. July 16, 2014) (internal citations omitted). It is undisputed that Denton County Sheriff William Travis (the elected official holding the power to hire and fire detention officers subject to civil service review) was aware of the existence of Plaintiff's lawsuit against the County at the time of his termination. Defendant argues that there is no evidence that this knowledge was in any way related to Plaintiff's termination. Nonetheless, there is evidence that Travis was aware of Plaintiff's suit prior to his termination.

Plaintiff further argues that the fact that he was terminated a mere four months after this suit was filed is evidence of a causal link. Plaintiff is correct in his assertion that "[c]lose timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a *prima facie* case of retaliation." *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997). And, as to temporary proximity, the Court finds that Plaintiff has offered sufficient summary judgment evidence to create a fact issue.[3]

In its analysis as to Plaintiff's *prima facie* showing, the Court is mindful that "the requirement that a plaintiff show at the *prima facie* case stage a 'causal link' between a protected activity and an adverse employment action is 'much less stringent' than the 'but-for' causation that a jury must find." *Miller v. Metrocare Servs.*, 2015 WL 477233, at *5 (N.D. Tex. 2015) (citing

---

[3]Defendant has argued that the time between the adverse action and protected activity proximity should be measured from the date of Plaintiff's first complaint (August 2012) until his termination (April 2013) rather than the date of filing suit (January 2013). Because the Court finds that no fact issue has been demonstrated as to pretext, the Court does not address this argument further. The Court finds that there is a sufficient fact issue as to temporal proximity to satisfy a *prima facie* showing.

*Montemayor v. City of San Antonio,* 276 F.3d 687, 692 (5th Cir. 2001) and *Khanna v. Park Place Motorcars of Hous., Ltd.,* 2000 WL 1801850, at \*4 (N.D. Tex. 2000) (characterizing this prima facie case burden as "minimal")). Therefore, for purposes of this motion, the Court finds that Plaintiff has satisfied his burden in showing a *prima facie* causal connection between the filing of his FLSA suit and his termination.[4]

<u>Non-Retaliatory and Pretext</u>

Assuming Plaintiff's evidence of the temporal proximity between his termination and filing of this suit is sufficient to create a fact issue in satisfying his *prima facie* case of retaliation, Defendant has offered sufficient summary judgment to show to its legitimate, nonretaliatory reason for Plaintiff's termination. *See* Dkt. 57-3. According to the record, Plaintiff was terminated for "intentionally and recklessly" kicking two stacked milk crates, causing an inmate to fall to the floor "in a supine position," in violation of Denton Sheriff's Office Code of Conduct, Section #2.01, IV, T. Responsibilities and General Conduct (Treatment of Persons in Custody), Section #2.01 III, A. Personal Conduct and Responsibilities (Unbecoming Conduct), and Section #2.01 II, A. Confirmance to Rules and Law. *See id.* at 7.

According to the affidavit of Sheriff Travis, he "was shocked by the conduct," "felt that this was conduct unbecoming an officer... [and] so contrary to the behavior expected of Detention

---

[4] The Court further finds that Defendant's summary judgment argument and evidence regarding the *prima facie* causal link – at least in this case – is more appropriately discussed in the Court's discussion below of pretext and but-for causation.

Officers in the Denton County Sheriff's Office," and "felt that, barring the investigation uncovering extenuating circumstances which would have justified the detention officer's conduct, this conduct warranted termination." Dkt. 57-1 at ¶6. According to Travis, "there is no excuse for a detention officer to engage in an unprovoked use of force against an inmate which could cause that inmate injury." *Id.*

Defendant also cites to the affidavit of Joseph Connolly, the Lieutenant for Professional Standards in the Denton County Sheriff's Office. *See* Dkt. 57-3. Connolly conducted the internal affairs investigation into Plaintiff's conduct and prepared the internal memoranda and reports regarding Plaintiff's kicking of the milk crates. Attached to Connolly's affidavit are the reports and other materials pertaining to the investigation into Plaintiff's conduct as well as the video recording of the incident in question. *See* Dkt. 57-3. According to Connolly, "[a]fter completing the investigation into Mr. White I determined that the allegations against him should be sustained due to the fact that he engaged in behavior which was outside the scope of his responsibilities, was irresponsible, was immature, had the potential to create liability, set a poor example, and possibly constituted criminal conduct and/or a violation of the inmate's constitutional rights." Dkt. 57-3 at 3, ¶5. Connolly's affidavit further states that, although he did not recommend any particular disciplinary action with regard to Plaintiff, when he learned of Plaintiff's termination he "did not believe that this punishment was too harsh or was out of line with what was seen as appropriate in the Sheriff's Office" and that he "believed that Mr. White's conduct was an offense serious enough

to warrant termination, though [he] made no recommendation regarding same" because the Sheriff's Office Civil Service Commission which would have final authority regarding the conclusions of the investigation and as to what disciplinary action, if any, was warranted. Dkt. 57-3 at 4, ¶5.

Connolly further provides that, although he was aware of Plaintiff's lawsuit, no one ever expressed a negative opinion to him about it. According to Connolly, "the fact that Mr. White had a pending lawsuit against the County over an unrelated matter was not in any way considered as I conducted my investigation into the April 5, 2013, incident, and no pressure was put upon me by any person, formally or informally, to sustain an allegation against Mr. White in any manner." Dkt. 57-3 at 4, ¶6.

Defendant having met its burden of production as to the reasons for Plaintiff's termination, the burden shifts back to Plaintiff to show to show "by a preponderance of the evidence that the reasoning presented by the defendant[s] is a pretext for retaliation." *Smith v. Sw. Bell Tel. Co.,* 456 Fed. App'x 489, 492 (5th Cir. 2012) (per curiam) (quoting *Mauder v. Metro. Transit Auth. of Harris Cnty., Tex.,* 446 F.3d 574, 584 (5th Cir.2006)) (internal quotation marks omitted). A plaintiff can demonstrate pretext "by showing that the employer's proffered explanation is unworthy of credence." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143, 120 S. Ct. 2097, 147 L. Ed.2d 105 (2000) (citation and internal quotation marks omitted). "An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." *Laxton v. Gap Inc.,* 333 F.3d 572, 578 (5th Cir. 2003).

As noted above, in this case, Plaintiff cites to the proximity between the filing of this suit and his termination as evidence of causation and pretext.  However, the inquiry is not that simple because "temporal proximity alone is insufficient to prove but for causation."  *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007).  Plaintiff must offer more.

Defendant cites to the *Pittman* decision out of this District to argue that Plaintiff cannot offer sufficient circumstantial evidence in support of his retaliation claim because there is no evidence to create a fact issue regarding factors such as: (1) knowledge of the claim by those making the decision to terminate; (2) expression of a negative attitude toward the employee's injured condition; (3) failure to adhere to established company policies; (4) discriminatory treatment in comparison to similarly situated employees; and (5) evidence that the stated reason for discharge was false.  *Pittman v. Collin County, Texas,* 2010 WL 1330752, at *5 (E.D. Tex. Mar. 30, 2010) (Schell, J.).[5]

As evidence of pretext, Plaintiff argues that Sheriff Travis knew about his lawsuit prior his decision to terminate Plaintiff.  Defendant cites to Travis's affidavit in which he states that he at the time he saw the video of the incident leading to Plaintiff's termination prior he was not aware that Plaintiff was the deputy who was involved but thought the conduct "warranted termination."  Dkt. 57-1 at 4.  Plaintiff has cited to no evidence that would show that Travis's knowledge of his suit was

---

[5]As noted above, these factors are argued by Defendant in its discussion of Plaintiff's *prima facie* burden.  The Court finds that they are more instructive in this case in the Court's analysis of pretext, as this is where Plaintiff primarily discusses them.  Because Plaintiff ultimately has the summary judgment burden as to pretext, the Court thus discusses the evidence in that framework.

the but-for cause of the adverse employment action, and, as discussed below, Ray Davenport's testimony about Sheriff Travis's opinion regarding the lawsuit fails to create a fact issue here as to ultimate caustation.

Plaintiff further cites to an email from the Sheriff to another employee regarding the filing of suit by that employee against the County in which the Sheriff states to the officer "if you did file a suit and you want to come back to work ...[t]he lawsuit has to be dropped." Dkt. 71-1. Plaintiff argues that this is evidence of a "negative attitude towards the protected activity." Dkt. 71 at 9. Because this email was not directed to Plaintiff regarding Plaintiff's lawsuit, the Court finds that it fails to create a fact issue as to pretext.

Plaintiff also argues that there is evidence of other officers who were not terminated for far worse conduct. Plaintiff cites to examples of incidents where other Denton County officers were not terminated for actions including being "amped up" and ramming an inmate's head into a wall, having a sexual relationship with an inmate's wife, engaging in race discrimination, locking them in a safety vestibule for no apparent reason, engaging in a pattern of non-compliance with duties, lying about having a cell phone, removing a shirt, entering a cell and calling the inmates "punk a** b****s." *See* Dkt. 73-1 – 73-12. The Court is not convinced that this creates a fact issue as to Plaintiff's retaliation claim.

Defendant argues that Plaintiff cannot rely on incidents occurring under the old sheriff, Sheriff Parkey, rather than Sheriff Travis, who terminated Plaintiff, because the decisions were not

made "by the same supervisor." *See, e.g., Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009). The change in sheriffs happened in such close proximity to Plaintiff's termination that the Court declines to find that Plaintiff should be precluded from looking into the conduct of past detention officers to determine whether there were similarly situated employees who were not treated as Plaintiff was. Even so, Plaintiff's reliance on prior incidents fails to create fact issue.

Of the many incidents cited by Plaintiff, the majority cannot be deemed to have been taken under nearly identical circumstances. *See, e.g., Lee,* 574 F.3d at 260 (discussing similarly situated analysis in race-based employment discrimination case). Nor has Plaintiff demonstrated how these incidents involved conduct nearly identical to his. *Id.*

As argued by Defendant, two of the three incidents referenced by Plaintiff in his deposition, did not involve any physical force and the one involving force also involved a non-compliant inmate. Dkt. 57-7 at 64; 57-11 at 6; 57-5 at 3-58. The Court cannot find this to be "nearly identical conduct" of other officers.

Plaintiff's summary judgment response also cites to the treatment of Officer EW who was only reprimanded (rather than terminated) for placing a hand on an arrestee's shoulder and pushing him to the ground during a pat down. Dkt. 73-1. Notably, in this circumstance (which occurred after Plaintiff was terminated), the detention officer conceded that he "could have handled the situation differently." Dkt. 73-1 at 2. Nothing in the record indicates that Plaintiff conceded his wrongdoing regarding the milk-crate incident or that he was truthful to investigators. Instead, the record indicates

that Plaintiff initially claimed that the incident was an accident but eventually changed his statement to investigators to state that he did intentionally kick the crates but only meant to lightly do it. Dkt. 57-3 at 3; 87.

The Court has also reviewed the video recording of the July 6, 2013 incident involving EW conducting the pat down on the arrestee in a holding area. *See* Plaintiff's Exhibit 20 (DVD recording). The circumstances under which the force was used – in a holding area in which the arrestee was apparently being searched for contraband – involved an objectively heightened security situation and a potential physical struggle. The use of force (even if ultimately determined to be excessive) during an active search by an officer for contraband in a holding area cannot be said to be substantially similar to the use of force against an individual already screened for contraband who is passively sitting on stacked milk crates in a detention area. The circumstances in which the force was used by each officer was thus not "under nearly identical circumstances" and fails to create any fact issue here. *See, e.g., Lee,* 574 F.3d at 260.

The Court has also reviewed the video recording of Plaintiff kicking the milk crates out from underneath an inmate. Dkt. 57-3 at 92 (Exhibit C to Connolly Affidavit, DVD recording). The recording clearly shows an inmate sitting on stacked milk crates. The inmate does not stand or appear to physically provoke Plaintiff in any manner. The video further shows a clearly purposeful kicking of milk crates by Plaintiff.[6] In the Court's opinion, this unwarranted, unprofessional and

---

[6]As to any suggestion by Plaintiff that the reason for his termination was "trivial," (*see* Dkt. 71 at 6), Defendant has offered voluminous evidence regarding the offensive nature of

unjustified conduct in and of itself is indisputable grounds for immediate termination.

Laughter and crying out can be clearly heard. Although Plaintiff argues that the inmate was faking any injury resulting from his fall, the Court finds that whether there was malingering by the inmate is irrelevant to whether Plaintiff's conduct was provoked or professional or whether it warranted termination. The Court finds that Plaintiff has failed to create a fact issue that his conduct was appropriate, and given the clear recording likely could not offer any evidence to show otherwise.

Defendant has also cited to records of an incident where a former detention officer was terminated for choking and hitting an inmate who had not violated any rules. *See* Dkt. 57-5 at 60. Defendant argues that this incident is an incident involving nearly identical conduct because both situations involved an unprovoked use of force by a detention officer. The Court agrees that this misconduct is most similar to Plaintiff's (even if Plaintiff argues that his actions were made in jest), and finds that Plaintiff has not demonstrated that there is a fact issue regarding the treatment of similarly situated employees. No pretext is shown by this evidence regarding other employees.

Plaintiff also argues that Defendant failed to follow established procedures and failed to properly investigate the allegations against him. Plaintiff cites to former Assistant Chief Deputy Roy Davenport's testimony that Sheriff Travis did not follow established policy and that Davenport had concerns about the investigation into Plaintiff. Dkt. 71-5 at 7-13. Indeed, in attempting to

---

Plaintiff's conduct, as well as evidence to show the potential liability faced by the County. Plaintiff has not rebutted that evidence with any summary judgment evidence to show that his conduct was "trivial," and the video recording of the incident clearly demonstrates otherwise.

demonstrate pretext, Plaintiff relies heavily on the testimony of Davenport, who is no longer an County employee.

At his deposition, Davenport testified as to how a termination decision was "typically" made, stating that he would be consulted "in most instances." Dkt. 87-1 at 4. Although Davenport's testimony criticizes the lack of policies within the Sheriff's Department after Sheriff Travis took over and notes that Plaintiff's investigation file as a "little thin" (*see* Dkt. 71-5 at 6), Davenport did not cite to – and Plaintiff does not cite to or show – any specific internal policy that was violated in the course of Plaintiff's termination.

Although Plaintiff also argues that an internal affairs investigation would not have been opened had he not filed his FLSA suit, he does not show how this is evidence of pretext and he offers no evidence to rebut Defendant's summary judgment evidence, including Joseph Connolly's affidavit, setting forth the standard manner in which the internal affairs investigation was conducted. *See* Dkt. 57-3.[7] Plaintiff has simply not adduced sufficient evidence to create a fact issue regarding the purported failure to follow policy in his termination. *Miller v. Metrocare Servs.*, 2015 WL 477233, at *9 (N.D. Tex. Feb. 5, 2015) ("The fact that Metrocare 'normally' followed certain procedures when terminating an employee that it did not observe when discharging Miller is

---

[7]The Court further notes that Defendant cites to portions of the summary judgment record indicating that Plaintiff failed to timely appeal his termination under the County's internal procedures. Because the Court finds that Plaintiff has failed to create a fact issue regarding pretext, it does not address whether Plaintiff should have raised his challenges to the internal procedures in an underlying administrative proceeding.

insufficient to permit a reasonable jury to find that Metrocare's proffered reasons for terminating his employment are pretextual."); *see also Paris v. Sanderson Farms, Inc.*, 542 Fed. App'x 370, 375 (5th Cir. 2013) (holding that employer was entitled to summary judgment on FMLA claim where employee based pretext argument on employer's violation of "its own company policy," but failed to offer evidence that employer had actually violated any company policy); *Grubb v. Sw. Airlines*, 296 Fed. App'x 383, 390 (5th Cir. 2008) (per curiam) ("Failure to follow internal procedures is generally not enough to create a genuine issue of fact as to discriminatory motives.").

Further, although Plaintiff offers deposition testimony from Davenport (who Defendant characterizes as disgruntled) about Sheriff Travis's alleged feelings regarding Plaintiff's lawsuit, Plaintiff has cited to no evidence that would rebut Defendant's summary judgment evidence as to Connolly's conclusion that the allegations against Plaintiff should be sustained and belief that the alleged conduct warranted termination. *See* Dkt. 57-3. The Court further finds that – even if taken as true – Davenport's claim that Travis was not "happy" about Plaintiff's lawsuit (*see* Dkt. 71-5 at 16) fails to create a fact issue that the lawsuit was the but-for reason for his termination or that the grounds for termination were pretextual. Notably, although Davenport testified that he would have been consulted in most instances of termination, he had no involvement in the decision to terminate Plaintiff. Dkt. 71-5 at 9. His testimony thus fails to create a fact issue as to causation and pretext as it pertains to Plaintiff's termination.

The ultimate determination in an FLSA retaliation case is whether the conduct protected by the FLSA was the "but for cause" of the adverse employment decision. *Kanida v. Gulf Coast Med. Personnel LP,* 363 F.3d 568, 580 (5th Cir. 2004) ("This court has repeatedly stated that in retaliation cases [under the FLSA] the employee must prove that the adverse employment action would not have occurred 'but for' plaintiff's protected activity." (citing cases)); *see also Univ. of Tex. Sw. Med. Ctr. v. Nassar,__* U.S.__, 133 S. Ct. 2517, 2528, 186 L. Ed.2d 503 (2013) ("Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action."); *Little v. Technical Specialty Prods. LLC,* 2013 WL 5755333, at *4 (E.D. Tex. 2013) (noting that Fifth Circuit has repeatedly required that the plaintiff establish "but for" causation, which "is consistent with the Supreme Court's holding in *Nassar,* and, thus, the standard for FLSA retaliation cases was not altered by the *Nassar* decision."). When making a claim of retaliation "the plaintiff must show a conflict in substantial evidence on the question of whether the employer would not have taken the challenged adverse employment action but for the protected activity." *Kopszywa v. Home Depot USA, Inc.,* 2015 WL 4737367, at *4 (5th Cir. Aug. 11, 2015) (internal citations omitted).

Plaintiff has failed to demonstrate any such conflict in the substantial evidence here. Absent the arguable temporal proximity between the date of his filing suit and the date of his termination – a little more than four months apart – there is nothing that would create a fact issue as to the reason for his termination. "Temporal proximity may only create a genuine dispute of material fact on the

issue of but-for causation if the employee also introduces other probative evidence of pretext." *Kopszywa*, 2015 WL 4737367, at *4 (internal citations omitted); *see also Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 656 (5th Cir. 2004) ("Without more than timing allegations, and based on Alltel's legitimate, nondiscriminatory reason in this case, summary judgment in favor of Alltel was proper."). Plaintiff simply has not offered evidence to show that but-for this lawsuit he would not have been terminated from the County's employment.

The Court notes that, although the Court declined to dismiss Plaintiff's retaliation claim for failure to use the words "but for" in his complaint, the Court cautioned Plaintiff in its report and recommendation that he would be required to present evidence showing that he would not have been terminated ***but for*** his FLSA claims in order for his retaliation claim to survive. Dkt. 45 at 14-15. Plaintiff has failed to do this and should take nothing by his retaliation claims.

### RECOMMENDATION

For these reasons, the Court recommends that Defendant's Motion for Summary Judgment (Dkt. 57) be GRANTED, that Plaintiff take nothing by his remaining claims, and that Defendant be awarded its costs herein.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(C).

A party is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.; Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 25th day of August, 2015.**

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE